IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WALTER ANDERSON,

    Plaintiff

v.

MICHAEL DOHMAN, et al.,

    Defendants

CIVIL ACTION NO. 3:18-CV-1741

(Judge Caputo)

MEMORANDUM

*Pro se* Plaintiff Walter Anderson, a state inmate presently incarcerated at the Frackville State Correctional Institution (SCI-Frackville), in Frackville, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983 on August 12, 2018.[1] (ECF No. 1.) Prior to the Court's screening of the Complaint, Mr. Anderson filed a motion to amend (ECF No. 12) and an Amended Complaint (ECF No. 11). In the Amended Complaint, Plaintiff claims prison officials: (1) improperly denied his request for a single cell (Z-code); (2) failed to reinstate his friend's visiting privileges; and (3) mishandled his legal mail, interfering with his access to the courts. (ECF No. 11.) Mr. Anderson names the following individuals as Defendants: John Wetzel, the Secretary for the Pennsylvania Department of Corrections (DOC); Kathy Brittain, Superintendent of SCI-Frackville; and David Radziewicz, the DOC's Chief Compliance Officer of the Prison Rape Elimination

---

[1] Mr. Anderson initially filed this action in the United States District Court for the Eastern District of Pennsylvania asserting claims against prison officials at SCI-Graterford and SCI-Frackville. SCI-Graterford is in the Eastern District of Pennsylvania while SCI-Frackville is in this district. On August 30, 2018, after granting Mr. Anderson leave to file *in forma pauperis*, the Eastern District Court dismissed all claims related to prison officials at SCI-Graterford and transferred the remaining claims to this Court. See ECF No. 7.

Act (PREA). Also pending before the Court is Plaintiff's unbriefed motion for preliminary injunction (ECF No. 2), motion for appointment of counsel (ECF No. 4) and motion to reduce the number of copies of filings he must serve upon the Court and Defendants (ECF No. 5).

The Court proceeds to review and screen the Amended Complaint pursuant to 28 U.S.C. § 1915 and 28 U.S.C. § 1915A. For the reasons set forth below, the Court will grant Mr. Anderson's motion to file an amended complaint and accept his proposed Amended Complaint. The Court will dismiss Mr. Anderson's access-to-courts claim based on his admitted failure to properly exhaust this claim prior to filing this action. Plaintiff's Z-code claim will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Mr. Anderson's visitation claim survives the Court's screening of the Amended Complaint. Plaintiff will be granted leave to file a second amended complaint. Plaintiff's remaining motions will be denied.

II. **Standard of Review for Screening *Pro Se In Forma Pauperis* Complaints**

When a litigant seeks to proceed *in forma pauperis*, without payment of fees, 28 U.S.C. § 1915 requires the court to screen the complaint. See 28 U.S.C. § 1915(e)(2)(B). Likewise, when a prisoner seeks redress from a government defendant in a civil action, whether proceeding *in forma pauperis* or not, the court must screen the complaint. See 28 U.S.C. § 1915A(a). Both 28 U.S.C. § 1915(e)(2)(B) and § 1915(A) give the court the authority to dismiss a complaint if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant

who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i) - (iii); 28 U.S.C. § 1915A(b)(1) – (2); *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013).

A complaint is frivolous if it lacks an arguable basis either in law or fact. See *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citing *Neitzke v. Williams*, 490 U.S. 319, 327-28, 109 S.Ct. 1827, 1832 - 33, 104 L.Ed.2d 338 (1989)). In deciding whether the complaint fails to state a claim on which relief may be granted, the court employs the standard used to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6). See *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). Under Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 - 11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949 - 50, 173 L.Ed.2d 868 (2009)). The court may also rely on exhibits attached to the complaint and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). A complaint is required to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).

To test the sufficiency of the complaint, the court "must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, a court must "take note of the elements a plaintiff must plead to state a claim." *Id.* (internal quotations and brackets omitted). Second, the court must identify allegations that are merely legal conclusions "because they . . . are not entitled to the assumption of truth."

*Id.* While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964). Third, a court should assume the veracity of all well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949).

A complaint filed by a *pro se* plaintiff must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 - 21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Yet, even a *pro se* plaintiff "must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir.2013) (citation omitted). *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014).

### III.   Allegations of the Amended Complaint

Mr. Anderson has been in the custody of the Pennsylvania Department of Corrections (DOC) continuously since 1984. He had a single cell (i.e., he did not have a cellmate) from 1994 to 2002, and then again from 2004 through 2017. (ECF No. 11, ¶ 14.) On December 18, 2017, Mr. Anderson was transferred to SCI-Frackville and housed with another inmate. Mr. Anderson asserts he "cannot defecate or urinate in the

cell while his cellie is present and does not allow his cellies to do the same." (*Id.*, ¶7.) Plaintiff "has issues with pulling down his pants exposing himself in front of another man as he watches" the Plaintiff use the toilet. (*Id.*, ¶ 10.) Mr. Anderson does not attend meals, so he can use the toilet in his cell when his cellmate is not present. During an institutional lockdown, between December 21 – 23, 2017, Mr. Anderson was forced to withhold his excrement for several days due to his inability to use the toilet in his cellmate's presence. Plaintiff also has trouble sleeping when housed with another inmate. Plaintiff asked Defendants to issue him a Z-code, i.e. a single cell, as is done for transgenders, but his requests were denied.

Next, Mr. Anderson claims his due process rights were violated prison officials terminated the visitation privileges of his friend, Ms. Latisha Dudley. Ms. Dudley was accused of violating the DOC's visitation rules, but later cleared of any wrongdoing. (*Id.*, ¶ 18.) On May 23, 2018, Superintendent Brittain denied Mr. Anderson's request to have Ms. Dudley's visitation rights reinstated without giving him the opportunity to demonstrate her innocence. (*Id.*, ¶¶ 17 - 20.)

Finally, Mr. Anderson claims that on August 28, 2018, Secretary Wetzel issued a mandatory lockdown of all state correctional institutions. During this time, all inmate mail delivery was stopped, and a new inmate mail processing policy was instituted. (*Id.*, ¶ 22.) On September 7, 2018, prison officials called Mr. Anderson to the property room to receive his legal mail. He received additional legal mail a few days later. In both instances his legal mail involved civil suits against the DOC and SCI-Frackville staff. (*Id.*, ¶ 26.) The correctional officer (CO) who delivered his legal mail opened it in Mr. Anderson's presence, checked it for contraband, and after determining there was no

contraband present, provided Mr. Anderson with a copy of his legal mail. When Mr. Anderson requested the original pieces of mail, staff told him the originals would be held for a period and then destroyed. (*Id.*, ¶ 25.) Mr. Anderson has no way of knowing if prison officials destroyed his legal mail. Likewise, he is uncertain whether they did so without reading it. He fears that if prison staff read his legal mail they will interfere with his ability to litigate his case. (*Id.*, ¶ 27.) "On September 11, 2018, Plaintiff filed a grievance concerning the original copy of his legal mail. The grievance is pending review as of the filing of [his] Amended Complaint." (*Id.*, ¶ 28.) Mr. Anderson filed his original Complaint on August 12, 2018. (ECF No. 1 at 25.) He filed his Amended Complaint on September 30, 2018. (ECF No. 11 at 8.)

IV. **Discussion**

    A. **Mr. Anderson's Admitted Non-Exhaustion of his Legal Mail Claim**

Pursuant to the Prison Litigation Reform Act (PLRA), a prisoner is required to pursue all available administrative remedies within the prison's grievance system before bringing a civil rights action concerning prison conditions in federal court. *See Ross v. Blake*, ____ U.S. ____, ____, 136 S.Ct. 1850, 1855, 195 L.Ed.2d 117 (2016); 42 U.S.C. § 1997(e)(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion in prisoner cases is mandatory. *Ross*, ____ U.S. at ____, 136 S.Ct. at 1856 - 57. The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002).

Section 1997(e)(a) requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006). "Proper" exhaustion requires a prisoner to "us[e] all steps that the agency holds out, and [to do] so *properly* (so that the agency addresses the issues on the merits)." (*Id.*) This means that the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." (*Id.*) "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 923, 166 L.Ed.2d 798 (2007). Failure to comply substantially with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227 – 32 (3d Cir. 2004); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016).

As previously noted, under the PLRA, "exhaustion is a precondition for bringing suit under § 1983." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013). Generally, a prisoner's failure to exhaust his available administrative remedies as to each claim raised is an affirmative defense to be pleaded and proven by the defendant. *See Ray v. Kerestes*, 285 F.3d 287, 295 – 96 (3d Cir. 2002). However, where an inmate's complaint shows a failure to exhaust a claim on its face, it is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *Jones*, 549 U.S. at 215, 127 S.Ct. at 921 ("A complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative

defense ... appears on its face.") (quoting *Loveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

Compliance with, and the "availability" of administrative remedies is a question of law district courts can decide, without the presence of a jury, even if there are disputed facts. *See Small*, 728 F.3d at 270 - 71. However, prior to doing so, district courts must give "some form of notice to the parties and an opportunity to respond." *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018). Here, because no further development of the record is necessary to address the exhaustion of Mr. Anderson's legal mail claim, the Court can dismiss it *sua sponte* when screening the Amended Complaint.

There are no factual disputes regarding Mr. Anderson's exhaustion of his legal mail claim. In his Amended Complaint Plaintiff admits his legal mail claim accrued "after the filing of the initial complaint". (ECF No. 11, ¶¶ 34 – 35 and ECF No. 12, Mot. to Amend. Compl., ¶ 3.) Additionally, he concedes that his grievance concerning his legal mail claim "is pending review as of the filing of [his] Amended Complaint." (ECF No. 11, ¶ 28.) From the face of the Amended Complaint, Mr. Anderson acknowledges that there is an administrative grievance procedure available to him but that he did not complete the grievance process with respect to his legal mail claim before filing his Complaint or Amended Complaint. *See Ahmed v. Dragovich*, 297 F.3d 201 (3d Cir. 2002) (exhaustion requires completion of the entire administrative remedy process *prior* to filing suit) (emphasis added). Because it is apparent from the face of the Amended Complaint that Mr. Anderson is barred from pursuing federal relief as to his legal mail in this action, this claim will be dismissed pursuant without leave to amend.[2]

---

[2] Our ruling today does not preclude Mr. Anderson from filing a separate action raising the same claim once he has exhausted his available administrative remedies.

## B. Mr. Anderson does not have a Constitutional right to a Single Cell.

"It is well established that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39, 122 S.Ct. 2017, 2027, 153 L.Ed.2d 47 (2002). An inmate does not have a protected liberty interest arising from the Due Process Clause to be assigned to a particular custody level, security classification, or place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221 - 22, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005) (finding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *see also Thomaston v. Meyer*, No. 12-4563, 2013 WL 2420891 (3d Cir., Jun. 5, 2013)(holding that denial of inmate's request for Z code status is not a deprivation of a protected liberty interest). Likewise, "the denial of Z-code status, by itself, is not cruel and unusual punishment and does not rise to the level of an Eighth Amendment violation." *Mattis v. Dep't of Corr.*, No. 16-0306, 2017 WL 6406884, at *12 (W.D. Pa. Dec. 15, 2017) (citing *Gellock v. Prison Health Servs., Inc.*, No. 07-8, 2009 WL 2038235, at *8 (W.D. Pa. July 8, 2009)).

Mr. Anderson fails to state a claim upon which relief can be granted based on the denial of a single cell or Z-code. Plaintiff is aware the DOC has a Z-code policy that allows certain inmates to receive a single cell and that he "does not fit none of the [ ] qualifications." [3] (ECF No. 2.) Plaintiff understandably would prefer a single cell, but he

---

[3] "[T]here exists a system in the PA Department of Corrections where prisoners that can not be placed in cells with other prisoners for various reasons (assaultive behavior, mentally

does not have a right to choose his cell assignment. He does not allege that he suffers from a serious medical or mental health need that requires he receive a Z-code status. Likewise, to the extent he argues that requiring him to double cell exposes him to possible assault, he does not allege any facts to suggest that his cellmate made sexual advances toward him and that after advising staff, he was not removed from the cell. He does not allege his cellmate ever harmed him. Mr. Anderson's claim that his request for a single cell was not considered in the same manner as those made by transgender inmates also fails to state a claim as he is not transgender. As alleged in the Amended Complaint, Mr. Anderson fails to state a claim for which relief may be granted based on the denial of his request for a single cell. Accordingly, this claim is subject to dismissal pursuant to 28 U.S.C. § 1915. However, since it is not clear that Plaintiff's amendment of this claim would be futile, Mr. Anderson will be granted leave to amend to correct the deficiencies of his denial of a Z-code claim.

### C. Leave to Amend to file a Second Amended Complaint

Mr. Anderson will be granted twenty-one days to file a second amended complaint to replead his Z-code claim. If Mr. Anderson decides to file a second amended complaint, he is advised he must clearly designate on the face of the document that it is the "Second Amended Complaint." It must bear the docket number assigned to this case and must be retyped (double spaced) or legibly rewritten (double spaced) in its entirety, on the court-approved form.[4] In addition, the second "amended

---

unstable, aggressive, homosexual, sexual predators, and transsexual) are given a single cell status." (ECF No. 2.)

[4] In the "Caption" section of the second amended complaint, Plaintiff must state the first and last name, to the extent he knows it, of each defendant he wishes to sue. Plaintiff should

complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the [Complaint or Amended Complaint] already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). Mr. Anderson is advised that any second amended complaint he may file supersedes (replaces) the original and amended complaint already filed. In addition, it must be "retyped or reprinted so that it will be complete in itself including exhibits." M.D. Pa. LR 15.1; *see also W. Run Student Hous. Assocs. V. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). Consequently, all causes of action alleged in the Amended Complaint (ECF No. 11) that were not dismissed with prejudice and are not included in the second amended complaint will be deemed abandoned and will not be considered. In other words, Mr. Anderson's failure to include either his visitation or Z-code claim in the second amended complaint will result in the excluded claim being waived by Plaintiff.

Mr. Anderson is also advised that his second amended complaint must be concise and direct. *See* Fed. R. Civ. P. 8(d). Each allegation must be set forth in individually numbered paragraphs in short, concise and simple statements. *Id.* The allegations in the second amended complaint may not be conclusory. Instead, Plaintiff must plead facts to show how each defendant named is personally involved or directly responsible for the alleged harm. In other words, the allegations should be specific enough as to time and place and should identify the specific person or persons responsible for the deprivation of his constitutional rights and what each defendant did that led to deprivation of his rights. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948.

---

also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both.

If Plaintiff fails to file a second amended complaint on the Court's form within twenty-one days, and in compliance with the Court's instructions, the Court will proceed strictly on his denial of due process claim with respect to his visitation with Ms. Dudley. If Mr. Anderson files a second amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and/or failure to state a claim.

Finally, Plaintiff is reminded of his obligation to advise the Court of any change of address. See M.D. Pa. LR 83.18. His failure to do so will be deemed as his abandonment of the lawsuit resulting in the dismissal of the action.

### D.     Motion for Injunctive Relief

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). In determining whether to grant a preliminary injunction, a court must consider whether the party seeking the injunction has satisfied four factors: "1) a likelihood of success on the merits; 2) he or she will suffer irreparable harm if the injunction is denied; 3) granting relief will not result in even greater harm to the nonmoving party; and 4) the public interest favors such relief." Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010) quoting Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir. 2010); see also Fed. R. Civ. P. 65.

Mr. Anderson seeks a Court mandate requiring prison officials to provide him "with a temporary Z-code (single cell status) until the conclusion of this civil action." (ECF No. 2.) As previously discussed, currently Mr. Anderson fails to state a claim for which relief may be granted based on Defendants' denial of his request for a single cell.

As he has failed to demonstrate a likelihood of success on the merits on this claim, his motion for injunctive relief will be denied.

### E. Motion for Counsel

Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the Court has discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Parham v. Johnson*, 126 F.3d 454, 456 – 57 (3d Cir. 1997); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). "Appointing counsel for an indigent civil litigant is 'usually only granted upon a showing of *special circumstances* indicating the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present facts and legal issues to the court in a complex but arguably meritorious case.'" *Parkell v. Danberg*, 833 F.3d 313, 340 (3d Cir. 2016) (quoting *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984)) (emphasis in original).

"[V]olunteer lawyer time is a precious commodity[,]" *Montgomery*, 294 F.3d at 499, so the decision to recruit counsel for an indigent prisoner should be exercised "discerningly." *Id.* at 505 n. 10. The Third Circuit Court of Appeals has provided guidance for the exercise of the district court's discretion in this regard. At the threshold, the Court must decide whether the plaintiff's case, "has some arguable merit in fact and law." *Id.* at 499. A court need not appoint counsel "if the indigent's chances of success on the merits are extremely slim." *Id.* at 500 (quoting *Hodge v. Police*

*Officers*, 802 F.2d 58, 60 (2d Cir. 1986)) (internal quotation marks and brackets omitted). If the threshold requirement is met, the Court then considers a number of factors to determine whether to request counsel for an indigent party. These factors include: (1) Plaintiff's ability to present his own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) Plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Tabron*, 6 F.3d at 155 - 57. If the case "appears to have merit" and "most of the aforementioned [*Tabron*] factors have been met," the Third Circuit "instruct[s]" that the district court "should make every attempt to obtain counsel." *Montgomery*, 294 F.3d at 505 (quoting *Parham*, 126 F.3d at 461) (internal quotation marks omitted) (alteration in original).

In the instant case, the Court cannot assess the complexity of the case or the likelihood of success on the merits until it receives Mr. Anderson's second amended complaint or is notified that Plaintiff intends to proceed on the sole surviving visitation claim asserted in his Amended Complaint (ECF No. 11). The Court therefore will deny Mr. Anderson's motion for appointment of counsel at this time, without prejudice.

### F. Motion for Reduction of Copies

Mr. Anderson states the DOC only permits indigent inmates like himself to anticipate up to $10.00 per month on their inmate account for legal mail and copying charges. (ECF No. 5.) Because of this limitation, he seeks the Court "to grant a

reduction of copies from 8 copies to 4 copies, in regards to all 'motions' pertaining to this civil action that the plaintiff must file with the Court." (*Id.*) The motion will be denied. When Mr. Anderson filed his motion, in the Eastern District of Pennsylvania, there were eight named Defendants, requiring him to serve eight copies of every document he filed with the Court. Presently there are only four Defendants. Depending on whether Mr. Anderson files a second amended complaint this number may increase or decrease. Therefore, at this point the Court will not alter Mr. Anderson's filing requirements as prescribed by Rule 5 of the Federal Rules of Civil Procedure.

An appropriate order follows.

**Date: April 9, 2019**  /s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**